1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

PEDRO RODRIGUEZ,

12
                                    Petitioner,

13
        v.

14
OFFICER FISHER, Warden,

15
                                    Respondent.

16

17

18

19

20

21

22

23

24

Case No. 21-cv-1442-BAS-MSB

**ORDER:**

**(1) GRANTING RESPONDENT'S MOTION TO DISMISS [ECF No. 27];**

**(2) DENYING PETITIONER'S MOTIONS FOR DISCOVERY [ECF No. 43] AND FOR APPOINTMENT OF COUNSEL [ECF No. 48];**

**(3) OVERRULING PETITIONER'S OBJECTIONS [ECF Nos. 45-46];**

**(4) GRANTING IN PART AND DENYING IN PART PETITIONER'S REQUESTS FOR JUDICIAL NOTICE [ECF Nos. 46, 49]; AND**

**(5) DENYING MOTION REQUESTING SAN DIEGO SHERIFF'S DEPARTMENT TO RECOGNIZE PETITIONER AS PRO SE [ECF No. 50]**

25

26
        State prisoner Pedro Rodriguez ("Petitioner") filed a Writ of Habeas Corpus

27
("Petition") pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

28
("AEDPA"), 28 U.S.C. § 2254 *et seq.*, on July 28, 2021, approximately 531 days after his

- 1 -

deadline to do so under 28 U.S.C. § 2244(d)(1).  (Pet., ECF No. 1.)  The Petition stems from Petitioner's 2015 conviction in the California Superior Court for the County of San Diego ("California Superior Court") for thirteen offenses, for which he sentenced to a collective period of imprisonment of 13 years and four months.  (*Id.*)  He is proceeding *pro se* and *in forma pauperis*.  (*See* ECF No. 7.)

Now before the Court is Respondent's motion to dismiss the Petition as untimely. (Mot. to Dismiss the Pet. ("MTD"), ECF No. 27; Mem. in supp. of MTD ("Mem."), ECF No. 27-1.)  In support of its MTD, Respondent lodged the records of Petitioner's underlying criminal case and his state habeas proceedings. (Record, ECF No. 28.)[1] Petitioner traversed on February 17, 2022. (Traverse, ECF No. 38.)  After briefing on the MTD closed, Petitioner filed a motion for leave to amend his Traverse (Mot. for Leave to Amend, ECF No. 51) and then subsequently filed an Amended Traverse, along with exhibits from his state court proceedings (Amended Traverse, ECF No. 53.)[2]

While the MTD was pending, Petitioner filed numerous other motions and objections.  In particular, Petitioner filed motions seeking discovery (Mot. for Discovery ("Discovery Mot."), ECF No. 43) and for appointment of counsel, which is his second such request.  (Mot. for Appointment of Counsel ("Appointment Mot."), ECF No. 48). Petitioner also filed several other miscellaneous documents, including (1) an Objection to Magistrate Judge Michael S. Berg's March 17, 2022 Order (*see* First Objection, ECF No. 45); (2) an Objection to Respondent's lodgment at ECF No. 28-18 (*see* Second Objection, ECF No. 46); (3) a Request for Judicial Notice (Request for Judicial Not. ("RJN"), ECF No. 49); and (4) Request that the San Diego Sheriff recognize Petitioner as a *pro se* litigant (ECF No. 50).

//

//

---

[1] The state court record is comprised of 20 lodgments, all of which are annexed to ECF No. 28 as separate exhibits.

[2] Despite Petitioner's untimeliness, the Court considers the Amended Traverse in deciding the MTD.  (*See* ECF Nos. 51, 53.)

For the reasons set forth herein, the Court **GRANTS** Respondent's MTD and **DISMISSES** the Petition.   The Court further **DENIES** Petitioner's requests for discovery, for appointment of counsel, and to compel the San Diego Sheriff's Department to recognize him as a *pro se* litigant.   The Court also **GRANTS IN PART** and **DENIES IN PART** Petitioner's requests for judicial notice.   Finally, the Court **OVERRULES** Petitioner's Objections.

## BACKGROUND

## I.   STATE COURT PROCEEDINGS

In approximately 2015, Petitioner was convicted in California Supreme Court of eleven offenses involving unlawful sexual conduct with a minor, one count of burglary, and one count of attempting to dissuade a witness from reporting a crime.   (ECF No. 28-4 at 2.)   He appealed the judgment to the California Court of Appeal.   (ECF Nos. 28-2, 28-3.)[3]   The Court of Appeal issued a reasoned opinion affirming the California Superior Court's judgment on July 19, 2018.   (ECF No. 28-4.)   Thereafter, Petitioner sought review of the judgment in the California Supreme Court; his request was summarily denied on November 14, 2018, at which point the judgment of conviction became final ("Final Judgment").   (ECF Nos. 28-8, 28-9.)

On March 18, 2019, Petitioner constructively filed a habeas petition in the California Superior Court challenging his conviction and sentence, which was denied on April 18, 2019.[4]   (ECF No. 28-10.)   He thereafter constructively filed a habeas petition in the California Court of Appeal on April 29, 2019, which that Court denied in a reasoned

---

[3] Petitioner also filed a writ of mandate with the California Supreme Court, which was denied on April 11, 2018.   (ECF Nos. 28-6, 28-7.)

[4] "Under the 'mailbox rule,' a *pro se* prisoner's filing of a state habeas petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court." *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).   Thus, where, as here, a habeas proceeding is brought by a *pro se* state prisoner, courts look not to the date on which the petition was deemed filed on the record, but rather to the date on which the petition was delivered to prison authorities, *i.e.*, the date on which the document was signed by the petitioner.   This date is referred to as the "constructive" filing date.   *Parker v. Salazar*, No. CV 08-04333 RSWL (RZ), 2009 WL 2355707, at *1 n.1 (C.D. Cal. July 28, 2009) (holding that "absent evidence to the contrary," the constructive filing date is the date on which the petitioner signed the petition (citing, *inter alia*, *Stillman*, 319 F.3d at 1201)).

decision on May 10, 2019.  (ECF Nos. 28-12 at 7, 28-13.)  While that habeas petition was pending, on June 1, 2019, Petitioner constructively filed a second habeas petition in the California Court of Appeal in which he principally alleged he had been denied access to his legal files and to a law library since being transferred to San Diego Central Jail ("San Diego Jail") on approximately March 21, 2019.  (ECF No. 28-15.)  Both of those habeas petitions were denied.  On July 15, 2019, Petitioner constructively filed a habeas petition challenging his conviction and sentence in the California Supreme Court.  (ECF Nos. 28-16, 28-17.)  The California Supreme Court denied that petition on July 14, 2021 ("Habeas Denial"), stating in full:

> The petition for writ of habeas corpus is denied.  (*See In re Robbins* (1998) 18 Cal.4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]; *In re Clark* (1993) 5 Cal.4th 750, 767–769 [courts will not entertain habeas corpus claims that are successive].)  Individual claims are denied, as applicable.  (*See In re Dixon* (1953) 41 Cal.2 756, 759 [courts will not entertain habeas corpus claims that could have been, but were not, raised on appeal]; *In re Miller* (1941) 17 Cal.2d 734, 735 [courts will not entertain habeas corpus claims that are repetitive].)

(Habeas Denial, ECF No. 28-18.)[5]

## II.  FEDERAL HABEAS PROCEEDING

On July 28, 2021, Petitioner filed the instant Petition.  (*See* Pet.)  Respondent moved to dismiss the Petition as untimely on January 21, 2022, in response to which Petitioner filed a Traverse alleging he is entitled to both statutory and equitable tolling.  (*See* Traverse.)  On March 18, 2022, Magistrate Judge Michael S. Berg, to whom this case is assigned, issued an order following a March 17, 2022 teleconference attended by the parties and a representative of the San Diego Sheriff's Department (*see* ECF No. 41).  (Briefing Order at 2, ECF No. 42.)  In the Briefing Order, Magistrate Judge Berg

---

[5] Petitioner constructively filed a third state habeas petition in approximately April of 2019 in the California Supreme Court, which raised claims concerning the denial of his parole.  (ECF No. 28-19.) The California Supreme Court denied that petition as moot on July 14, 2021.  (ECF No. 28-20.)

effectively deemed briefing on Respondent's MTD complete and opined "there is no reason the Court cannot rule on the [MTD]" based on the record before it.  (*Id.*)

Nevertheless, on May 12, 2022, Petitioner constructively filed a Motion for Leave to Amend, seeking to file an Amended Traverse that contains additional arguments in favor of statutory and equitable tolling.  (Mot. for Leave.)  Although Petitioner did not append an Amended Traverse to his Motion for Leave, he later constructively filed an Amended Traverse on May 21, 2022, along with exhibits from his state court proceedings.  (Amended Traverse.)

Additionally, Petitioner seeks discovery and appointment of counsel.  (*See* Discovery Mot. and Appointment Mot.)  Furthermore, Petitioner constructively filed a document styled as an "Objection" to the Briefing Order on March 30, 2022 (referred to above as the "First Objection"). (ECF No. 45.)  The First Objection does not actually challenge the Briefing Order, but rather indicates that Petitioner was not receiving "mail or legal mail" during his confinement in the San Diego Jail in approximately March of 2022 and that, despite Respondent's assurances during the March 17, 2022 teleconference, Petitioner had not received a copy of the lodgments at ECF No. 28 or a filed version of his own Traverse.  The First Objection also requests the Court to take judicial notice of a February 4, 2022 *San Diego Union-Tribune* article.  On April 2, 2022, Petitioner constructively filed another Objection (referred to above as "Second Objection"), in which he argues the copy of the Habeas Denial filed at ECF No. 28-18 is "a misrepresentation of what the [California] Supreme Court decision says."  (ECF No. 46.)

Petitioner also constructively filed an Request for Judicial Notice (referred to above as "RJN") on April 16, 2022, in which he requests that the Court judicially notice his unsuccessful "attempts to contact a [sic] attorney through his family[.]"  Finally, on April 29, 2022, Petitioner constructively filed a document entitled "Petition for Order Directing San Diego Sheriffs to Recognize the Petitioner as a Pro Se Litigant" asking for "access to law library and legal work product" as he "is not receiving mail or legal mail"

and "relies on correspondence for copy service, case law, and redress in the courts." (ECF No. 50 at 1.)[6]

## III.   PETITIONER'S OTHER FEDERAL CASES

Despite Petitioner's repeated claims about his lack of access to legal materials and to a law library set forth in his pleadings and reiterated in his filings in this case, the Court takes judicial notice of the other federal and state court actions Petitioner has commenced and pursued since the Final Judgment in November of 2018.[7]  For instance, Petitioner commenced two other habeas proceedings in this district in August of 2021. *See*, *e.g.*, *Pedro Rodriguez v. Kathleen Allison*, 21-cv-1395-JLS-AHG (S.D. Cal. Aug. 3, 2021), ECF No. 1 (federal habeas petition with over 1000 pages of attachments); *Pedro Rodriguez v. Kathleen Allison*, 21-cv-1443-MMA-WVG (S.D. Cal. Aug. 9, 2021), ECF No. 1 (federal habeas petition with over 100 pages of attachments).  He also commenced a federal civil rights lawsuit under 42 U.S.C. § 1983 ("Section 1983") in the Eastern District of California in July of 2020.  *Pedro Rodriguez v. Gavin Newsom et al.* 1:20-cv-1044-DAD-HBK (E.D. Cal. July 29, 2020), ECF No. 1 (Section 1983 complaint with 30 pages of attachments including sentencing brief, sentencing materials, and copy of a July 17, 2020, state appellate court decision). Petitioner also appears to have appealed decisions in two other Section 1983 suits originating in the Eastern District of California in July and November of 2020, respectively.  *Pedro Rodriguez v. Scott Kernan, et al.*, 20-cv-16424 (9th Cir. July 24, 2020), Dkt. 1; *Pedro Rodriguez v. H. Longia, et al.*, 20-17262 (9th Cir. Nov. 18, 2020), Dkt. 1.  Finally, a review of Petitioner's federal filings further reveals he filed separate state habeas petitions in the California Court of Appeal on April

---

[6] Notably, in each of these filings Petitioner reiterates his lack of access to legal mail, his legal files, and a law library.  (*See* ECF Nos. 46, 49, 50.)

[7] Courts may "take judicial notice of court filings and other matters of public record."  *Reyn's Pasta Bell LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through [the Public Access to Court Electronic Records system].");  *see also Langer v. U.S. Green Techs., Inc.*, No. 20-cv-01717-BEN-BGS, 2020 WL 7353447, at *4 (S.D. Cal. Dec. 14, 2020) (judicially noticing PACER showed plaintiff commenced numerous, additional lawsuits).

7, 2021 and in the California Supreme Court on May 27, 2021.  *See Pedro Rodriguez v. Kathleen Allison*, 21-cv-1395-JLS-AHG (S.D. Cal.), ECF Nos. 27, 33.

**ANALYSIS**

**I.      Motion to Dismiss the Petition**

      **A.      Statute of Limitations**

AEDPA provides a one-year statute of limitations to file a petition for writ of habeas corpus in federal district court.  *See* 28 U.S.C. § 2244(d)(1).  Under the statute, the one-year period begins to run from the date the judgment becomes final at the conclusion of direct review "or the expiration of the time for seeking such review."  *Id.* §§ 2244(d)(1)(A).  A direct appeal becomes final upon the later of:  (1) the expiration of the time for seeking review in the relevant state supreme court; or (2) if the Petitioner seeks review in the United States Supreme Court, the time at which the conviction is affirmed or the petition of certiorari is denied.  *See Gonzalez v. Thaler*, 556 U.S. 134, 150 (2012); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073–74 (9th Cir. 2007), *cert. denied*, 555 U.S. 829 (2008).  Regardless of whether a petitioner actually files a petition for certiorari in the United States Supreme Court, the ninety-day period within which a petitioner can do so is included within AEDPA's period of direct review.  *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999).

Here, Petitioner's judgment became final on November 14, 2018.  (*See* Final Judgment.)  Petitioner thereafter had until February 13, 2019—or 90 days after the Final Judgment—to petition the United States Supreme Court for a writ of certiorari.  *See* 28 U.S.C. § 2101 ("Any other appeal or any writ of certiorari intended to bring any judgment or decree in a civil action, suit or proceeding before the Supreme Court for review shall be taken or applied for within ninety days after the entry of such judgment or decree.").  He did not do so.  Thus, the one-year statute of limitations period in this case began to run on February 13, 2019, and to have timely commenced a federal habeas action Petitioner was required to file the instant Petition by no later than February 13, 2020.  Yet Petitioner constructively filed his Petition on July 28, 2021, rendering it 531

days overdue.  Therefore, unless Petitioner can establish he is entitled to either statutory and/or equitable tolling of an equivalent duration, the Petition must be dismissed.  *See Zepeda v. Walker*, 581 F.3d 1013, 1019 (9th Cir. 2009) (affirming district court's dismissal of untimely federal habeas petition).

### B.   Statutory Tolling

The heart of the parties' dispute as it relates to statutory tolling is whether Petitioner is entitled to tolling for the period between July 15, 2019, when Petitioner constructively filed a habeas petition with the California Supreme Court, and July 14, 2021, when the California Supreme Court issued its Habeas Denial.  If so, the Petition undoubtedly is timely, for the AEDPA statute of limitations would have run for less than its stated one-year period.

Under AEDPA, the statute of limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding or other collateral review.  28 U.S.C. § 2244(d)(2) ("The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." (emphasis added)); *see Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). "A petition for a writ of habeas corpus is 'properly filed' when its delivery to, and acceptance by, 'the appropriate court officer for placement into the official court record' are in 'compliance with the applicable laws and rules governing filings.'" *Moreno v. Harrison*, No. C-04-2933-MMC, 2006 WL 2411421, at *2 (N.D. Cal. Aug. 18, 2006) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)).  State law "time limits, no matter their form, are filing conditions." *Pace*, 544 U.S. at 417.  "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of [28 U.S.C.] § 2244(d)(2)." *Id.*

Under California law, a state petition for habeas corpus must be filed "without substantial delay." *In re Robbins*, 18 Cal. 4th at 786.  "Substantial delay" is "measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." *Id.*  The

United States Supreme Court has held that the denial of a state habeas application for untimeliness under *In re Robbins* is sufficient grounds to bar federal review. *Walker v. Martin*, 562 U.S. 307, 312–21 (2011). Moreover, "if a state court denies a petition as untimely, none of the time . . . during the court's consideration of that petition is statutorily tolled." *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005), *amended*, 439 F.3d 993 (9th Cir. 2006).

At the outset, the parties appear to be in agreement that Petitioner is entitled to statutory tolling for the time during which his state habeas petitions were pending review before the California Superior Court and the California Court of Appeal, *i.e.*, between March 18, 2019 and May 10, 2019. That period covers 53 days.[8] But this tolling, alone, is insufficient to render the Petition timely. Indeed, it hardly makes a dent, for Petitioner must still establish an additional 478 days are subject to tolling. Petitioner claims he is able to make up this difference. Specifically, he argues that he is entitled to statutory tolling for the nearly two-year period his habeas petition was pending before the California Supreme Court. (Traverse at 5–6.) Respondent disagrees. (Mem.) In Respondent's view, Petitioner is not entitled to statutory tolling for that period because his state habeas petition was not "properly filed." (*Id.* at 8–9.)

Here, contrary to Petitioner's assertion otherwise, it is clear the Habeas Denial is predicated upon California's timeliness bar in *In re Robbins*. (Habeas Denial ("The petition for writ of habeas corpus is denied. (*See In re Robbins* (1998) 18 Cal.4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]").) *Peralta v. PBSP-Warden*, No. EDCV 14-1592 AB (FFM), 2015 WL 4885305, at *2 (C.D. Cal. Apr. 10, 2015) (holding the California Supreme Court's citation to *In re Robbins* is sufficient to indicate its decision to deny habeas was predicated upon the timeliness bar).

---

[8] By Respondent's calculations, Petitioner is entitled to just 35 days of statutory tolling. (Mem. at 8.) However, Respondent incorrectly uses the dates on which the state habeas petitions were deemed filed, as opposed to their constructive filing dates, to calculate the tolling period. *See Stillman*, 319 F.3d at 1201.

Generally speaking, the California Supreme Court's explicit application of California's timeliness bar precludes a federal court from finding the petitioner is entitled to statutory tolling during the pertinent period. *See White v. Martel*, 601 F.3d 882, 884 (9th Cir. 2010) (per curiam) ("When a California state court determines that a state prisoner's state habeas petition is untimely under state law, there is no 'properly filed' state petition, and [the state petitioner] is not entitled to statutory tolling under the AEDPA."). Federal courts typically should not undertake their own analysis to determine whether, in fact, there was a "substantial delay," or whether that delay was excusable, in replacement of the California Supreme Court's express determination on those issues in the decision denying habeas. *See Valdez v. Montgomery*, 918 F.3d 687, 692 (9th Cir. 2019) ("If a California court has held that a state habeas petition was timely or untimely, we are bound by that decision." (citing *Robinson v. Lewis*, 795 F.3d 926, 929 (9th Cir. 2015))).

However, as Petitioner correctly argues, the United States Supreme Court has also allowed for the possibility an otherwise adequate state procedural rule could be found inadequate in its application to a particular case if the petitioner shows the state court's imposition of the procedural rule was "novel and unforeseeable" and without "fair or substantial support in prior state law." *See Martin*, 562 U.S. at 320; *see also Lee v. Kemna*, 534 U.S. 362, 376 (2002) ("There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."). Petitioner argues the California Supreme Court applied the timeliness bar in a "novel [and] unforeseeable manner" in its Habeas Denial. (Discovery Mot. at 1 (citing *Walker v. Martin*, 562 U.S. 307 (2011); *see also* Traverse at 10 (arguing Petitioner "has been timely, diligent and within statutory limitations in regard to [sic] filings" and "[t]here was no way to predict or indication [sic]

- 10 -

21cv1442

1  that the CA Supreme Court would declare the Petitioner untimely," which "did not occur

2  until July 2021").)[9]

3      The Court is unpersuaded the California Supreme Court's imposition of the *In re*

4  *Robbins* timeliness bar was either novel or unforeseeable.   With the exception of

5  Petitioner's ineffective assistance of appellate counsel claim, the claims raised in the state

6  habeas petition were claims for which the factual basis was, or should have been, known

7  well before Petitioner raised those claims in his 2019 state habeas petitions.  For instance,

8  with respect to Petitioner's "Ground One" claim of actual innocence, Petitioner himself

9  indicates the factual basis for the claim was discovered in March 2016.  (*See* Pet. at 17.)

10  Meanwhile, Petitioner indicates "Ground Two" is premised on the "[s]ame operative

11  facts as ground 1."  (*Id.* at 23.)  "Grounds Four, Five, Six and Nine" concern allegations

12  of ineffective assistance of trial counsel, judicial bias, conviction under a vague and

13  overbroad statute, and denial of right to self-representation, all of which appear based on

14  facts Petitioner knew or should have known at the time of trial.  (*See id.* at 26–31.)

15  "Grounds Seven, Eight and Ten," which pertain to allegations of prosecutorial

16  misconduct, prosecutorial deception, and denial of orderly legal procedure also appear to

17  be based on the facts and prosecutorial acts discussed in Ground One, which again,

18  Petitioner acknowledges he knew in March 2016.  (*See id*. at 30–31.)  Put simply,

19  Petitioner knew, or should have known, practically all the grounds upon which his state

20  habeas was premised approximately three years before pursuing any collateral attack

21  upon his judgment.  Thus, it cannot be said the California Supreme Court's invocation of

22

23      [9] In Petitioner's First Objection, he asserts: "The Petitioner is unable to rebut the state's
24  arguments on novel application of the timeliness rule."  (First Objection at 4 (citing *Bounds v. Smith*,
   430 U.S. 817, 825-26 (1977)).)  *Bounds* is a United States Supreme Court case holding access to courts
25  requires providing prisoners with access to legal research, libraries, and other legal assistance to allow
   for challenges against their convictions and sentences and conditions of confinement.  *See id.*, 430 U.S.
26  at 825–28, *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996)*.*  However, Respondent
   has not advanced any argument on the "novel application" matter.  (*See* Mem.)  Only Petitioner has
27  offered argument concerning "novel" application of the timeliness rule.  (*See e.g.*, Discovery Mot. at 1.)
   Thus, it is not apparent to this Court what argument he is unable to rebut due to any asserted lack of
28  access to legal research or other assistance.

1   the *In re Robbins* time bar as to the state habeas petition in its entirety was either novel or

2   unforeseeable.

3       Indeed, the contents of Petitioner's own state habeas petition reveal that even *he*

4   *foresaw* that his habeas petition to California Supreme Court might encounter a

5   timeliness issue.  For example, in his July 2019 submission, petitioner contended that his

6   "habeas should be considered timely," referenced the difficulties he has experienced

7   accessing the law library and legal materials, and cited substantive case law concerning

8   prisoners' due process rights to access legal research, libraries, and other legal assistance

9   to allow for challenges against their convictions, sentences, and conditions of

10  confinement.  (ECF No. 28-16 at 24 (citing, *inter alia*, *Bounds*, 430 U.S. at 817).)

11  Petitioner specifically argued that his "filing should be considered timely . . . [because]

12  the [P]etitioner has been frustrated from law [sic] library access both at Valley State

13  Prison January 2019 forward and San Diego Sheriff's 3/20/2019 Forwa [sic] to wit the

14  [P]etitioner filed a writ of habeas June 6, 2019 demanding access to his legal materials."

15  (*Id.*)   In view of Petitioner's clear contemplation his state habeas petition could

16  potentially run afoul of California's timeliness requirements, the Court is not persuaded

17  the California Supreme Court's imposition of *In re Robbins* was at all "unforeseeable" in

18  this case.  Nor does the Court find its imposition "novel" given the bulk of Petitioner's

19  claims (again, save the claim of ineffective assistance of appellate counsel) arose from

20  facts known at or around the time of trial.

21      Because Petitioner fails to establish the California Supreme Court imposed the

22  timeliness bar in a novel or unforeseeable manner, this Court is bound to the California

23  Supreme Court's explicit decision in the Habeas Denial that Petitioner's state habeas

24  petition was untimely.  *See also Valdez*, 918 F.3d at 692 (citing *Robinson v. Lewis*, 795

25  F.3d 926, 929 (9th Cir. 2015)).  Thus, the Court concludes that Petitioner's state habeas

26  petition with the California Supreme Court was not "properly filed" within the meaning

27  of AEDPA and, therefore, he is not entitled to statutory tolling for the nearly two-year

28  period that application was pending.

1

### C.  Equitable Tolling

2     A litigant will be entitled to equitable tolling only if he can show "(1) that he has

3   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in

4   his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)

5   (citing *Pace*, 544 U.S. at 418).   This is a high bar, and equitable tolling will be

6   "unavailable in most cases." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)

7   ("[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions

8   swallow the rule.").   "[A] *pro se* petitioner's lack of legal sophistication is not, by itself,

9   an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia*, 448

10  F.3d 1150, 1154 (9th Cir. 2006).   "Ordinary" restrictions on a petitioner's access to legal

11  materials and resources fall short of "outright den[ials]," and, thus, do not amount to

12  "extraordinary circumstances" capable of invoking equitable tolling. *Ramirez v. Yates*,

13  571 F.3d 993, 998 (9th Cir. 2009) ("Ordinary prison limitations on [a petitioner's] access

14  to the law library and copier (quite unlike the denial altogether of access to his personal

15  legal papers) were neither 'extraordinary' nor made it 'impossible' for him to file his

16  petition in a timely manner.   Given even the most common day-to-day security

17  restrictions in prison, concluding otherwise would permit the exception to swallow the

18  rule").   Furthermore, even where extraordinary circumstances are present, a causal

19  connection must be shown between the extraordinary circumstances alleged and the

20  delay. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

21    Petitioner avers he is entitled to equitable tolling for virtually the entire period

22  between the Final Judgment and his filing of the instant Petition.[10]   Specifically, he

23  claims that he has had "difficulty" accessing his legal materials and a law library, which

24  he attributes to a variety of reasons.   Under, he alleges that he was denied access to the law

25  library in the facility at which he was held from late 2018 until early 2019.   In support of

26  that assertion, Petitioner provides a copy of a prison complaint he filed when he

27

28    [10] The Court notes that Petitioner need not establish he was entitled to equitable tolling prior to February 13, 2019.  Until that time, the AEDPA statute of limitations had not even begun running.

attempted to use, but was denied access to, the library on December 21, 2018.  (*Id.* at 242.)  Petitioner's institutional appeal was denied, noting Petitioner had attempted to access the library outside of the scheduled time provided to him and Petitioner had been provided with the minimum required library time of four hours per week.  Petitioner also filed an additional complaint after being denied access to the law library during the week of January 18, 2019.  (*Id.*)

These allegations are a far cry from showing Petitioner was completely deprived of access to legal materials and a law library, which is needed to establish circumstances sufficiently extraordinary to invoke equitable tolling.  What Petitioner complains of are ordinary (and reasonable) limitations placed upon his library access during this time period, *i.e.*, that he was denied access to the library on specific days, outside of scheduled hours, and beyond the total number of total weekly hours typically allotted to prisoners.  But that sort of deprivation is insufficient as a matter of law to invoke equitable tolling.  *See Ramirez*, 571 F.3d at 998 ("Ordinary prison limitations on [a petitioner's] access to the law library . . . [are] neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner."); *see also Afrah v. Sidhu*, No. 14-CV-02303-BAS(NLS), 2015 WL 8759131, at *3 (S.D. Cal. Dec. 14, 2015) ("A *complete* lack of access to a legal file may constitute an 'extraordinary circumstance'") (emphasis added).

The record of Petitioner's state habeas proceedings only further undermine his claim the restrictions upon library access to which he was subjected during late 2018 and early 2019 were extraordinary.  Indeed, immediately following the timeframe about which Petitioner complains, he filed a voluminous and well-researched habeas petition in the California Superior Court in March of 2019 and two petitions in the California Court of Appeal in April and June of 2019.  *See Ramirez*, 571 F.3d at 998 (permitting district courts, when faced with claims that a petitioner was deprived of access to legal materials and a library, to infer from a petitioner's legal filings in federal and state court during the relevant period that the alleged deprivation neither was "extraordinary" nor the actual cause of the delay); *Afrah*, 2015 WL 875913, at *3 (opining that a petitioner's filing of a

well-reasoned and timely habeas petition in state court militated against finding limitations on a petitioner's library access during that time amounts to "extraordinary circumstances" or caused the federal habeas petition to be untimely).  Petitioner offers no explanation why his claimed lack of access to legal materials and a law library caused only a delay in the instant federal habeas Petitioner, but not his state court equivalents. *See Spitsyn*, 345 F.3d at 799 (holding a petitioner must show the extraordinary circumstances actually caused the delay for which equitable tolling his sought to cover).

Second, Petitioner alleges that he was deprived of necessary legal materials during his time at the California Health Care Facility in Stockton ("CHCF"), where he was involuntarily admitted in approximately late February of 2019, and his time at the San Diego Jail, where he was held between March and June of 2019.[11]  Petitioner supports this contention by annexing to his Petition newspaper clippings and mail, reflecting he was in CHCF in late February of 2019—February 22, 2019 at the latest.  (Pet. at 247–48.)  Other documents indicate Petitioner was at some point thereafter transferred to the San Diego Jail in either late February or March of 2019.  (*Id.* at 252 (a report filed by the San Diego Sheriff's Department resulting from a grievance Petitioner submitted on March 27, 2019, which was identical to another grievance Petitioner filed the prior day and which indicate Petitioner "came from prison on 3/21/19").)  These documents reflect that Petitioner complained in a grievance report to San Diego Jail administrators about "not [being] allowed access to his legal mail."  (*Id.*)  The grievance report appears to confirm the lack of access to legal mail, noting that Petitioner "ha[d] 11 boxes of legal paper, which are currently being stored in the law library," and that "11 boxes of mail in an inmate's cell would in fact constitute a fire hazard, which is why [Petitioner] has not been given his mail in his cell.  [Petitioner] is pro per, and therefore is not scheduled for law library were [sic] his legal mail has been stored."  (*Id.*)

---

[11] This identical contention appears in Petitioner's state habeas petition filed with the California Supreme Court in July of 2019.  (*See* ECF No. 28-16.)  That Court clearly did not find it constituted sufficiently "good cause" to withhold application of the *In re Robbins* timeliness bar.  (*See* Habeas Denial.)

21cv1442

In essence, it appears that Petitioner was transferred to CHCF either around the time his judgment became final on February 13, 2019, or shortly thereafter, and then transferred several weeks later to the San Diego Jail, where he remained until June of 2019 at the latest. (*See* ECF Nos. 27-11 at 4 (at Valley State Prison when California Superior Court issued denial of State Petition on April 18, 2019); 28-12 at 7 (at San Diego Jail on April 29, 2019 when State Petition constructively filed with California Court of Appeal); 28-14 (at San Diego Jail on June 1, 2019 when Second State Petition constructively filed with California Court of Appeal); 28-16 (at Valley State Prison on June 5, 2019 when State Petition constructively filed with California Supreme Court).)

Again, Petitioner's claim that, during his time at CHCF and the San Diego Jail, he was denied adequate access to his legal materials and a law library is belied by the record. Petitioner filed a substantive state habeas petition in California Superior Court in March of 2019, just after his admission to CHCF. He filed yet another state habeas petition with the California Court of Appeal in April of 2019, while he was held in San Diego Jail. *See Ramirez*, 571 F.3d at 998. In any event, as explained *supra* Analysis Sec. I.B, Petitioner already is entitled to statutory tolling for the 53-day period from March 18, 2019 through May 10, 2019, which significantly overlaps with the period during which he was held at the San Diego Jail. Thus, even assuming *arguendo* Petitioner has made the requisite showing he is entitled to equitable tolling during the period he was held in CHCF and San Diego Jail (he has not), which this Court charitably calculates to be between mid-February until the beginning of June, it would not render the Petition timely. Petitioner still would need to identify over 400 additional days during which he was subjected to extraordinary circumstances that caused his Petition to be delayed.

 Third, Petitioner asserts that he was—and continues to be—denied adequate access to his legal materials and a law library beginning in March of 2020 because of COVID-19 lockdowns and quarantines. (Pet. at 32; Traverse at 8–10 ("Covid-19 made it impossible to file the petition on time and should qualify as an extraordinary circumstance the Petitioner is still suffering.").) The Petition, the Traverse, and the

Amended Traverse are devoid of any factual content that would enable this Court to determine whether the restrictions placed on Petitioner's access to legal materials and research during the COVID-19 pandemic amount to extraordinary circumstances. However, Petitioner's filings in this action and in other federal actions he has litigated during the complained-of period lead this Court to draw the inference that, whatever those restrictions might have been, they were neither extraordinary nor the cause of the Petition's delinquency. Indeed, despite Petitioner's allegations of limited access to legal resources in July of 2021, Petitioner was able to file the instant, well-researched and voluminous Petition—including 250 pages of attachments consisting of records from his state court proceedings—just two weeks after the Habeas Denial on July 14, 2021. Petitioner also commenced and pursued two other federal habeas petitions, a Section 1983 action, and two appeals to the Ninth Circuit during the COVID-19 pandemic. *See supra* Background Sec. III. Because Petitioner does not explain why COVID-19 restrictions purportedly placed upon his access to legal materials affected his ability to timely file his federal Petition only, the Court finds he is not entitled to equitable tolling for the period between March of 2020 and July of 2021. *See Ramirez*, 571 F.3d at 998.

Accordingly, the Court is not persuaded equitable tolling is available in sufficient measure such that it could render the federal Petition timely. Thus, the Court **GRANTS** Respondent's motion to dismiss for untimeliness and **DISMISSES** the Petition. (ECF No. 27.)

## II.   DISCOVERY MOTION

Petitioner requests discovery and expansion of the record pursuant to Rules 6 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts, effective February 1, 1997, and amended on February 1, 2010 ("Habeas Corpus Rules"). (Discovery Mot.) Specifically, he requests

- "any and all grievances, complaints or documents, '602s' and informal requests to Valley State Prison submitted by the Petitioner May 2018 forward";

21cv1442

- "all sentencing memorandum in case 333477 and 340334";

- his "medical history c-file including requests and grievances May 2018 forward";

- "all modified [unintelligible] daily program status report plan of operation staff & inmate notification from January 2019 to [September 30, 2021]";

- his "housing history May 2018 forward";

- "any and all documents created by CDCR staff or official in response to 602's and grievances submitted by Petitioner"; and

- "all chronos generated by Petitioners mental health provider."

(*Id.* at 4.)  He also requests interrogatories and production of documents from Valley State Prison, including materials concerning the duties of the librarian and any operating upgrades to the "Lexis-Nexus computers," as well as whether there is any case law concerning "state habeas corpus filed within the 'statute of limitations' but considered untimely by only the CA Supreme Court."  (*Id.*)  Petitioner avers that these materials are relevant to issues concerning his entitlement to tolling.  (*Id.* at 1–4, 6–7.)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Habeas Corpus Rule 6(a) provides district courts with discretion to authorize discovery in 28 U.S.C. § 2254 proceedings upon a finding of "good cause."  *See* Rule 6(a), 28 U.S.C.A. foll. § 2254.  Even so, the Ninth Circuit has cautioned that district courts "should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation."  *Calderon v. U.S. District Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996); *Earp v. Davis*, 881 F.3d 1135, 1143 (9th Cir. 2018) ("Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, neither do they provide a basis for imposing upon the state the

21cv1442

burden of responding in discovery to every habeas petitioner who wishes to seek such discovery." (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987))).

Even where a petitioner satisfies the "good cause" standard and shows discovery is warranted, the material and information sought must be in accordance with the Rules of Federal Civil Procedure that govern the scope of discovery. That is, the discovery sought must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Refco Grp. Ltd., LLC. v. Cantor Fitzgerald, L.P.*, 13 Civ. 1654 (RA) (HBP), 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) ("The burden of demonstrating relevance is on the party seeking discovery.").

As an initial matter, the Court notes that at least some of Petitioner's discovery requests bear relevance to his claim of equitable tolling. *Gilani v. Hewlett Packard Co.*, 15 Civ. 5609 (NSR), 2017 WL 4236564, at *1 (S.D.N.Y. Sept. 22, 2017) ("'Relevance' has been broadly interpreted to include 'any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case."). That is, Petitioner's request for discovery of documents pertaining to his medical and housing issues clearly relates to his claim that he endured "extraordinary circumstances" while imprisoned, to which his delay in filing his Petition purportedly is attributable.

But it is not the case that discovery should issue in a 28 U.S.C. § 2254 proceeding simply because a petitioner seeks discovery that fits within the ambit of Rule 26(b). As explained above, a petitioner must establish "good cause" to warrant the endeavor into discovery in the first instance. From the voluminous record reflecting Petitioner's litigiousness in state and federal court during the period for which he seeks equitable tolling, the Court infers easily that Petitioner's housing and medical circumstances— whatever they may have been—did not not prevent him from timely filing the instant

Petition, just as they did not inhibit his filing (and continuing to file) numerous pleadings, motions, and other submissions in state court, this proceeding, and other federal actions he commenced between March of 2020 and July of 2021. *See supra* Background Sec. III and Analysis Sec. I.C.

Accordingly, the Court finds Petitioner fails to establish requisite good cause to warrant discovery and, thus, **DENIES** Petitioner's Discovery Motion.

## III.    MOTION FOR APPOINTMENT OF COUNSEL

District courts are provided with statutory authority to appoint counsel in a federal habeas case when a petitioner is financially eligible and "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(b); *see also Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1086) ("Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations.") (citations omitted).

On January 12, 2022, Petitioner constructively filed a motion requesting appointment of counsel in the instant habeas matter. (*See* ECF No. 29.) On February 7, 2022, Magistrate Judge Berg issued an order denying the request for counsel without prejudice, concluding Petitioner failed to establish the "exceptional circumstances" required for appointment of counsel in a civil case. (Order Denying Appointment of Counsel at 2 (quoting *Agyeman v. Corr. Cor. Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004)), ECF No. 32.) Magistrate Judge Berg reasoned that "[d]espite his claimed lack of legal training, access to legal work and resources, and less than ideal circumstances resulting from being incarcerated during a pandemic, Petitioner has sufficiently represented himself to date and has drafted and submitted numerous documents without the assistance of legal counsel," and that "Petitioner's filings indicate that he has a sufficient grasp of his case and the legal issues involved, and that he can articulate the grounds for his Petition." (*Id.* at 2-3 (citing *LaMere v. Risley*, 827 F.2d 622, 627 (9th Cir. 1987) and *Taa v. Chase Home Fin.*, No.5-11-cv-00554 EJD, 2012 WL 507430, at *2 (N.D. Cal. Feb. 15,

2012)).)  Magistrate Judge Berg also observed that, despite his contention he had been separated from his legal materials, Petitioner's submissions have not only been supported by substantial case law but also exhibits from his state court proceedings.  (*Id.* at 3-4.) Magistrate Judge Berg thus concluded "the interests of justice do not currently warrant the appointment of counsel in this case."  (*Id.* at 4.)

Now before the Court is Petitioner's second application for appointment of counsel, which is predicated upon substantially the same ground as his first. (Appointment Mot. at 2-3 (averring appointment is necessary because he has been "obstructed from seeking legal representation as the lawyer directory is in the law library" which he cannot access, "is not receiving mail," and "is without" both legal work product and case law).)   The Court remains unpersuaded that Petitioner's situation warrants a different outcome than Magistrate Judge Berg's Order Denying Appointment of Counsel.  It is, again, plain from a review of the multitude of Petitioner's pleadings and filings in this case, including the detailed Petition and attached exhibits, the Traverse, the Motion for Leave to Amend the Traverse, and the Discovery Motion, that Petitioner is able to clearly communicate his claims and arguments, and to support those arguments with exhibits, documentation, and case law.[12]  Counsel, thus, does not appear necessary to assist Petitioner in this respect.  *See LaMere*, 827 F.2d at 626 (holding district court did not abuse discretion is declining to appoint counsel where "district court pleadings illustrate to us that [the petitioner] had a good understanding of the issues and the ability to present forcefully and coherently his contentions").)

Accordingly, the Court concludes the interests of justice currently do not warrant the appointment of counsel. Thus, the Court **DENIES** the Motion for Appointment.

//

//

//

---

[12] In so concluding, the Court finds significant that Petitioner submitted many of the above-mentioned filings *after* Magistrate Berg's initial denial.  (*See* ECF Nos. 38, 43, 45–46, 49.)

IV.   **MISCELLANEOUS REQUESTS AND OBJECTIONS**

    A.   **Requests for Judicial Notice**

"The court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"   *Von Saher v. Norton Simon Museum of Art Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n. 15 (3rd Cir. 2006)).

Petitioner asks the Court to take judicial notice of various facts across several filings.  First, Petitioner asks the Court to judicially notice a *San Diego Union-Tribune* newspaper article concerning an "audit" of the housing and medical conditions at the San Diego Jail.  (First Objection at 2–5.)  He essentially avers that some of substandard conditions identified in that audit have "frustrated and impeded" his ability to present his own claims.  (*Id.*)  Notably, Petitioner not only seeks judicial notice of the fact the audit received news coverage from the *San Diego Union-Tribune*; he also seeks judicial notice of the contents of the article and the audit's findings.  The Court declines to go so far, for the Court is restrained to judicially notice only the fact of news coverage, not its truth. *See Von Saher*, 592 F.3d at 960; *see also* Fed. R. Evid. 201(b).  Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's request in his First Objection for judicial notice of the *San Diego Union-Tribune* article, and the Court judicially notices the news coverage "solely as an indication of what information was in the public realm at the time." *Von Saher*, 592 F.3d at 960.

Petitioner next requests judicial notice of the fact he has purportedly attempted to "contact a [sic] attorney through his family" and that that endeavor has been obstructed due to his inability to communicate via email and his classification in the correctional system. (RJN.)  Such information is not properly subject to judicial notice.  Indeed, these

facts are neither "generally known" nor "can [they] be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). Accordingly, the Court **DENIES** Petitioner's request for judicial notice of his asserted attempts to contact counsel.

### B. Objections

Petitioner has filed two Objections since submitting his Traverse. In the first one, Petitioner objects that he has not received the Habeas Denial or the remainder of the state court record lodged at ECF No. 28 or a copy of his own Traverse at ECF No. 38. (First Objection.) By way of background, the Briefing Order indicates that at the March 17, 2022 teleconference, the Respondent agreed to send Petitioner a copy of the lodgments at ECF No. 28 (including a copy of the Habeas Denial) and a copy of Petitioner's own Traverse. (Briefing Order.) While Petitioner indicated in his First Objection he had not yet received those copies, the discussion concerning the veracity of the Habeas Denial in his Second Objection indicates that Petitioner has since received the requested lodgements. Therefore, the Court **OVERRULES** Petitioner's First Objection and **DENIES** Petitioner's request for the additional lodgments.

In Petitioner's Second Objection, he claims that the Habeas Denial filed at ECF No. 28-18 is "not the actual California Supreme Court decision" on Petitioner's state habeas petition filed in July of 2019. (Second Objection at 1.) The Court finds no infirmity or misrepresentation in the Habeas Denial filed at ECF No. 28-18, which is the docket sheet/appellate court case information reflecting the California Supreme Court denied case number S256832 on July 14, 2021, in a decision which stated in full:

> The petition for writ of habeas corpus is denied. (See In re Robbins (1998) 18 Cal.4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]; In re Clark (1993) 5 Cal.4th 750, 767-769 [courts will not entertain habeas corpus claims that are successive].) Individual claims are denied, as applicable. (See In re Dixon (1953) 41 Cal.2d 756, 759 [courts will not entertain habeas corpus claims that could have been, but were not, raised on appeal]; In re Miller (1941) 17 Cal.2d 734, 735 [courts will not entertain habeas corpus claims that are repetitive].)

(ECF No. 28-18.)

Given Petitioner attached to the federal Petition what appears to be a copy of the decision issued by the California Supreme Court in case number S256832 (*see* Pet. at 305), and Petitioner also attached a copy of the docket sheet/appellate courts case information from the California Supreme Court to the federal Petition (*see id.* at 310), the Court has reviewed and compared these submissions alongside ECF No. 28-18.  They are substantially identical.  The only difference appears to be the lack of italicization of case citations in the docket entry, which are italicized only on the copy of the California Supreme Court's decision itself.  (*Compare* Pet. at 305 *with* Pet. at 310 *and* ECF No. 28-18.)   Because the three documents appear substantively identical, the Court **OVERRULES** Petitioner's Second Objection.

### C.   Request that San Diego Sheriff's Department Recognize Petitioner as *Pro Se*

On November 16, 2021, Petitioner filed an "Ex Parte Request for Order Directing San Diego Sheriffs to Recognize Petitioner as Pro [Se] Litigant."  (ECF No. 24.)   On December 20, 2021, Magistrate Judge Berg issued an Order denying that request, reasoning in relevant part Petitioner had only presented "generalized claims," which "do not directly relate to his ability to file a specific document" and Petitioner must show "what he specifically is lacking to be able to complete his pleadings."  (*Id.* at 3 (citing *Lewis v. Casey*, 518 U.S. 343 (1996).)  In that Order, Magistrate Judge Berg encouraged Petitioner "to seek redress through the Sheriff's Department's internal processes and stated:  "If Petitioner lacks access to legal resources necessary to meet future deadlines, he should bring such issues (together with any specifics as related to his habeas petition in this case) to the Court's attention before he misses any deadlines."  (*Id.* at 4–5.)

On April 29, 2022, Petitioner constructively filed a similar request, entitled "Petition for Order Directing San Diego Sheriffs to Recognize the Petitioner as a Pro Se Litigant," which seeks an Order from this Court "grant[ing] the Petitioner access to law

library and legal work product." (ECF No. 50 at 1.)  In the instant request, Petitioner asserts:

> Since arriving at San Diego Central Jail the Petitioner has had no access to law library, legal work product is confiscated, little access to caselaw (when paging system works Petitioner can see five cases per month.)  And no access to unlimited correspondence with the courts, Attached "A"  The Petitioner has been housed for a time at George Bailey Detention Facility in a 39 man close quarter space where the Petitioner was continuously infected with Covid-19 and untreated Attached "B"  [¶]  The Petitioner was transferred to Vista Detention Facility and was housed for a time in darkness unable to read, Attached "C"  [¶]  Now transferred to San Diego Central Jail Petitioner is not receiving mail, Attached "A"

(*Id.* at 1–2.)  He also complains of "not receiving mail or legal mail," and that he "relies on correspondence for copy service, case law, and redress in the Courts." (*Id.* at 1.)

As with his November 16, 2021 request, Petitioner's claims are generalized and do not appear to relate to an asserted inability to file any specific document in this case. To date, the Court is not aware of any missed deadlines by Petitioner in this case, and Petitioner was granted the one extension of time he recently requested.  (*See* ECF Nos. 36, 37.)  Nor does Petitioner demonstrate an inability to file pleadings or other documents with the Court.   Indeed, Petitioner has not only filed an Opposition/Traverse to Respondent's motion to dismiss, but also recently has filed numerous objections, motions, and requests for judicial notice.  (*See* ECF Nos. 38, 43, 45–46, 48–53.)  Thus, no "actual injury" is apparent, despite Petitioner's claimed inadequate access to legal materials.  *See Lewis*, 518 U.S. at 351 ("Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense . . . . the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." (citing *Bounds*, 430 U.S. at 817)).

21cv1442

Accordingly, Petitioner's request is **DENIED**.  Petitioner is again encouraged to seek redress through the processes of the institution in which he is currently confined.

## V.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order adverse to the habeas petitioner, it must also issue or deny a certificate of appealability.  Rule 11(a), 28 U.S.C.A. foll. § 2254. This requirement includes a district court's decision based on procedural grounds, *e.g.*, timeliness.  *See Buck v. Davis*, --- U.S. ---, 137 S.Ct. 759, 777 (2017) ("[A] litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'" (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The Court finds issuing a certificate of appealability is appropriate in this instance as reasonable jurists could potentially find debatable the Court's conclusion Petitioner is not entitled to statutory or equitable tolling sufficient to render the federal Petition timely as well as the Court's conclusion Petitioner is not entitled to discovery/expansion of the record.  *See* 28 U.S.C. 2253(c); Slack, 529 U.S. at 484.  Accordingly, the Court **GRANTS** a certificate of appealability as to the availability of statutory tolling, equitable tolling, and discovery/expansion of the record.

## CONCLUSION

For the reasons stated above, the Court:

(1)   **GRANTS** Respondent's Motion to Dismiss based on timeliness.  (ECF No. 27.)

(2)   **DENIES** Petitioner's Discovery Motion.  (ECF No. 43.)

(3)   **DENIES** Petitioner's Motion for Appointment of Counsel.  (ECF No. 48.)

(4)   **DENIES IN PART** and **GRANTS IN PART** Petitioner's requests for judicial notice.  (ECF Nos. 45, 50.)

(5)   **OVERRULES** Petitioner's Objections.  (ECF Nos. 45–46.)

21cv1442

Accordingly, the Court **DISMISSES** the Petition and **GRANTS** a certificate of appealability as to the availability of statutory tolling, equitable tolling, and discovery and/or expansion of the record.   The Clerk of Court is **DIRECTED** to terminate all pending motions and to enter judgment accordingly.   The Clerk of Court is further **DIRECTED** to close this case.

   **IT IS SO ORDERED.**

**DATED: June 22, 2022**

Hon. Cynthia Bashant
United States District Judge

21cv1442